785 So.2d 981 (2001)
Edward "Eddy" JACKSON, Gwenda Lee Jackson & Matthew Edward Jackson, a Minor, Plaintiffs-Respondents,
v.
Maynard R. GARDINER, Jr., & Prudential Property and Casualty Insurance Company, Defendants-Applicants.
Nos. 34,643-CW, 34,690-CW.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
*982 Lunn, Iron, Salley, Carlisle & Gardner by James B. Gardner, Shreveport, Counsel for Applicant, Maynard R. Gardiner, Jr.
Cloyd, Wimberly & Villermarette, L.L.C. by F. Douglas Wimberly, Lafayette, Counsel for Applicant, Prudential.
Jeansonne & Remondet by R. Royal Alexander, Lafayette, Counsel for Respondents.
Before NORRIS, STEWART and CARAWAY, JJ.
CARAWAY, J.
This personal injury action arose when plaintiff fell off of the roof of a rental property owned by defendant. The roof had been damaged by a recent storm. The defendant and his insurer filed motions for summary judgment, arguing that plaintiff, as the defendant's agent and manager of the property, contractually assumed the duty to inspect the rental property, thus negating any duty the defendant may have owed plaintiff. The defendants also argued the property owner's lack of either actual or constructive knowledge of the alleged defect resulting from the storm. The trial court denied defendants' motions for summary judgment. We granted defendants' writ of certiorari to review the trial court's decision and now reverse.

Facts
Plaintiff, Edward Jackson ("Jackson"), agreed in 1990 to be the agent for defendant, Maynard R. Gardiner ("Gardiner"), to collect rent and maintain a residence owned and leased by Gardiner in Bossier City. The parties' contract provided, in pertinent part:
The agent is hereby authorized:

*983 * * *
D. To do and perform all other acts or things which the agent may deem necessary or advisable in the proper management of said property of (sic) properties; however, the agent will specifically be responsible for the following enumerated acts or responsibilities:
* * *
(3) Make inspections of property as needed.
Gardiner, who was on duty with the Air Force, never returned to Louisiana between the time of the 1990 contract and the 1999 accident.
After a storm in April 1999, Jackson climbed onto the roof of Gardiner's house to check for damage caused by a fallen tree limb. When he tried to remove the tree limb, Gardiner slipped and slid down the roof, falling to the ground. As a result of the fall, he broke both legs and crushed his heel. He required surgery on his right knee, and surgery to remove the bones in his toes. He also incurred injuries to his ankles, hips, upper shoulders and extremities, and his lumbar and thoracic spine.
On April 14, 2000, Jackson filed a petition for damages, alleging that the roof was slick from rain, pecan sap and small pieces of broken limbs remaining on the roof's surface. Jackson sued both Gardiner and Gardiner's homeowner's liability insurer, Prudential Property & Casualty Insurance Company ("Prudential"), alleging Gardiner's negligence in failing to provide adequate manpower, tools, safety equipment, professional assistance, and/or to remove a defective and/or unreasonably dangerous condition from the premises.
Prudential's May 15, 2000 answer was in the form of a general denial. On July 20, 2000, without answering the petition, Gardiner filed a Motion for Summary Judgment, which Prudential joined and adopted on August 3, 2000. The defendants argued that Jackson could not provide admissible evidence of any negligence by Gardiner, nor could he prove that Gardiner breached any legal duty, because of the contractual relationship between the parties. The evidence presented by defendants in support of their motions was the parties' 1990 contract, an affidavit by Gardiner, and an e-mail sent to Gardiner from Jackson's wife a few days after the accident. The e-mail states, in pertinent part:
On Monday 4-26-99 we had a bad windstorm at lunch time (APPROX (sic) 12:20) Pecan limbs were everywhere in your back yards and a couple fell onthe (sic) house. [N]othing really major, except that one did go thru (sic) the roof at the back porch ... Ed went up as soon as he got home Monday evening and while dislogging (sic) the limb, it tripped him knocking him off of the roof ... he didn't even come in Monday, but immediately went to your house to check the damage. [H]e is sooooo (sic) mad at himself. But it was totally an accident. [W]hen the limb was pulled out it tripped him and he couldn't hold onto the roof, being so slick (pecan sap and all) ... We did get someone over to patch the spot so that there would be no major damage if it rained ...
In an effort to counter defendants' motion, plaintiff submitted his own affidavit, first claiming that he called Gardiner in January 1998 for authorization to hire a professional tree service to cut large limbs off the pecan tree that were hanging over the roof. Secondly, Jackson averred that in April 1992, he wrote a letter to Gardiner to inform him that the shingles on the roof were in need of repair and/or replacement. *984 However, paragraphs 6 and 7 of Jackson's affidavit indicate that Gardiner approved these repairs:
6.
During the course of our approximately nine year relationship prior to my fall from the roof on April 26, 1999, I got the approval of Maynard R. Gardiner, Jr. to have the roof of the home at 845 Modica Street repaired.
7.
During the course of my approximately nine year relationship with Maynard R. Gardiner, Jr. prior to my fall on April 26, 1999, I got approval from Maynard R. Gardiner, Jr. to have the large pecan tree limbs over the back and middle portions of the roof at 845 Modica Street cut and removed because I wanted to avoid having leaves, tree sap and other debris gather on the roof.
After the trial court denied the defendants' motions, we granted a writ of certiorari to review the propriety of the trial court's ruling.

Summary Judgment Procedure
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966(C)(2).
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Ebarb v. Guinn Brothers, Inc., 31,426 (La.App.2d Cir.1/20/99), 728 So.2d 487. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966(C)(1); Ebarb, supra. Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court's grant of the judgment. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152; Tucker v. American States Insurance, 31,970 (La.App.2d Cir.9/22/99), 747 So.2d 620.

Discussion
Jackson's suit presents a negligence claim under La. C.C. arts. 2317 and 2322, which provide as follows:
La. C.C. art. 2317:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La. C.C. art. 2322:

*985 The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
As part of the 1996 tort revision, the law of strict liability was altered by the addition of the requirement of knowledge on the part of the owner or custodian of a thing. Carr v. Wal-Mart Stores, Inc., 00-896 (La.App. 5th Cir.11/2/00), 772 So.2d 865, writ denied, XXXX-XXXX (La.1/26/01), 782 So.2d 636. This revision establishes a negligence standard where the owner's duty is to exercise reasonable care to repair the damaged property and to recognize and repair or remove a vice or defect in the building which presents an unreasonable risk of harm to others.
In this case, Jackson asserts that Gardiner's roof was in need of repair as the result of the storm damage, and that there was an unkept and defective condition due to the sap from the overhanging pecan tree. In determining whether a defect or unreasonable risk of harm is present, the jurisprudence notes that the defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Penton v. Schuster, 98-1068 (La.App. 5th Cir.3/30/99), 732 So.2d 597. The owner of a building cannot be held responsible for all injuries resulting from any risk posed by his building, only those caused by an unreasonable risk of harm to others. Entrevia v. Hood, 427 So.2d 1146, 1149 (La. 1983). The duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and a potentially dangerous condition that should be obvious to all is not unreasonably dangerous. Thornton v. Board of Sup'rs of Louisiana State University, 29,898 (La.App.2d Cir.10/29/97), 702 So.2d 72, 74; Shaw v. Fidelity & Casualty Insurance Co., 582 So.2d 919 (La.App. 2d Cir. 1991). Where a risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable. Butzman v. Louisiana Power and Light Co., Inc., 96-2073 (La.App. 4th Cir.4/30/97), 694 So.2d 514; Robertson v. State ex rel. Department of Planning and Control, 32,309 (La.App.2d Cir.12/10/99), 747 So.2d 1276, writ denied, XXXX-XXXX (La.2/25/00), 755 So.2d 882; Thornton, supra.
In this case, whether we analyze Jackson's negligence case on the basis of the reasonableness of Gardiner's care for the roof, the reasonableness of his lack of knowledge of the roof's condition, or the unreasonable risk of harm posed by the roof, we find that there were two undisputed facts shown by defendants' motion for summary judgment that defeat Jackson's negligence claim. First, Jackson had a contractual duty, as Gardiner's agent, to regularly inspect and assess the condition of the property and to acquire knowledge on Gardiner's behalf concerning any dangerous conditions on the property. Unlike the injured parties in the above jurisprudence who encountered the owner's property as an innocent passerby, guest, or even a trespasser, Jackson was on the property to obtain information on Gardiner's behalf regarding the damaged or defective condition of the building.
*986 Second, the condition of the roof resulted primarily from a sudden event and was obviously dangerous. Because of the recent storm, there had been no time to make repairs. The slope of the roof, along with the tree branches, the tree sap, and other debris, presented an obvious risk that Jackson chose to encounter.
Under these circumstances, Jackson was unable to show in defense of the motions for summary judgment that he would be able to demonstrate that Gardiner, in the exercise of reasonable care, knew or should have known of the dangerous condition of the roof immediately following the storm. Additionally, Jackson did not show how the risk posed by with the obviously dangerous condition of the building's roof, resulting from the storm damage, presented an unreasonable risk of harm. As stated above, an obvious and easily avoidable risk is not unreasonable.
Finally, our review of Jackson's affidavit does not reveal any claim that Gardiner prevented Jackson from taking proper precautions, both before and after the storm, to deal with property damage from the pecan tree. Likewise, we find no merit in Jackson's assertion, presented only at oral argument, that defendants' motions were filed prematurely before Jackson had time to obtain discovery regarding Gardiner's 1991 insurance claim. In view of the sudden storm damage to the roof and the manner in which Jackson's fall occurred, Jackson does not allege or demonstrate how the 1991 claim, which he would have monitored as Gardiner's agent, was relevant or was not known to him.

Conclusion
For the reasons stated herein, the judgment denying defendants' motions for summary judgment is reversed, and summary judgments are entered in favor of Maynard R. Gardiner and Prudential Property and Casualty Insurance Company. Plaintiff's action is therefore dismissed with prejudice at his cost.
REVERSED AND SUMMARY JUDGMENTS GRANTED.