833 So.2d 1194 (2002)
Ronald Gene CARROLL, et al, Plaintiffs-Appellants,
v.
Robert HOLT, et al, Defendants-Appellees.
No. 36,615-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
*1196 Frank M. Ferrell, Shreveport, for Appellants.
Tutt & Bordelon, LLC By: Charles G. Tutt, Shreveport, for Appellees.
Before STEWART, GASKINS and CARAWAY, JJ.
CARAWAY, J.,
The accident in this case occurred when a roofer climbed onto a canopy overhanging a door of a customer's house. The canopy collapsed, and the roofer plummeted to the ground sustaining personal injuries. The jury found that the canopy did not present an unreasonable risk of harm, and the roofer's claims were dismissed. The roofer appeals, urging that the canopy did present an unreasonable risk of harm and that fault should be apportioned between the parties. Finding no manifest error in the jury's verdict, we affirm.

Facts
Ronald Gene Carroll owns a roofing company. In April of 2000, his company re-shingled a house owned by defendants, Robert and Dorothy Holt. On May 22, 2000, Carroll returned to the residence because of a leak in the roof. After identifying the location of the leak, Carroll stated to Mr. Holt that he needed to retrieve a ladder from his truck so that he could climb onto the roof. In response, Mr. Holt invited Carroll to use the Holts' ladder that was located at the back of the house by an exterior door. The water leak was in the roof area near that door. Carroll testified that he normally would not use the ladders of customers, but that he did on this occasion because of Mr. Holt's persistence. The ladder was an eight-rung step ladder approximately eight feet in height.
The accident occurred when Carroll attempted to climb upon the roof at the location of an extension roof or canopy that extended over a door on the side of the house. The canopy was intended to provide overhang protection from the rain at the entrance and had been built after the initial construction of the home. The canopy was approximately five to six feet wide and extended out 35 inches from the fascia board of the original roof. Two 2" × 4" braces nailed at the outer ends of the canopy connected diagonally back to the side of the house. The top of the canopy was covered with shingles and extended evenly from the roof of the house. The bottom had vinyl siding, which, according to Carroll, made it impossible to determine whether or not the canopy was connected to the rafters. The canopy had been built for the Holts by Joe Bizet.[1]
Carroll was an experienced roofer and had owned his own contracting business for 32 years. He testified that he had never fallen from a roof before the accident. On that day, however, he climbed the Holts' ladder and stepped onto the canopy, which immediately collapsed and caused him to plummet to the ground. As a result, Mr. Carroll's pelvic bone was fractured in two places. He also suffered fractures of the sacrum and the number twelve vertebra.
*1197 Eddie Lee Parish, an employee of Carroll for over 23 years, testified that he had re-shingled the Holts' house in April of 2000. At trial, he first testified that he usually stepped on canopies like the one at issue in this case. However, he was impeached with his statement from his deposition where he stated that he usually did not step on canopies because they were unstable.
The defense provided expert testimony from roofing contractors. They agreed that the canopy was not an extension of the rafters of the original roof and that its construction was standard in the Shreveport/Bossier area. Their testimony indicates that they would not expect a braced canopy like the one at issue to support the weight of a person and that scaffolding should be placed underneath before working on such canopy.
Following trial, the jury found that the canopy did not present an unreasonable risk of harm. Carroll disputes this finding and asserts that Mr. Holt is comparatively at fault for not advising Carroll of the danger at the time of the accident and for requiring Carroll to use his ladder.

Discussion
A reviewing court cannot disturb the factual findings of a trial court absent abuse of discretion or manifest error. Powell v. Regional Transit Authority, 96-0715 (La.6/18/97), 695 So.2d 1326; Rosell v. ESCO, 549 So.2d 840 (La.1989); State v. Baxter, 33,188 (La.App.2d Cir.5/10/00), 759 So.2d 1079. To reverse the trial court's factual findings, the appellate court must find from the record that no reasonable factual basis exists for the findings and must determine that the record establishes the findings as clearly wrong or manifestly erroneous. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993).
This case presents a negligence claim. La. C.C. art. 2317 states that persons are responsible for damages caused by things in their custody. The Civil Code further states the following:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
La. C.C. art. 2322. As a part of the 1996 tort revision, the law of strict liability was altered by the addition of the requirement of knowledge on the part of the owner or custodian of the thing. See Jackson v. Gardiner, 34,643 (La.App.2d Cir.4/4/01), 785 So.2d 981. This revision establishes a negligence standard where the owner's duty is to exercise reasonable care to recognize and repair or remove a vice or defect in the building which presents an unreasonable risk of harm to others. Id. at 985.
A defect cannot be inferred simply because an accident occurred. See Sanders v. Bain, 31,362 (La.App.2d Cir.12/9/98), 722 So.2d 386; Dufour v. E-Z Serve Convenience Stores, Inc., 98-996 (La.App. 5th Cir.3/30/99), 731 So.2d 915. There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. To assist the trier-of-fact, many factors are to be considered and weighed, including: (1) the claims and interests of the parties; (2) the probability *1198 of the risk occurring; (3) the gravity of the consequences; (4) the burden of adequate precautions; (5) individual and societal rights and obligations; and (6) the social utility involved. Dupree v. City of New Orleans, 99 3651 (La.8/1/00), 765 So.2d 1002, 1012.
Jackson, supra., involved a damaged roof and a fall by an inspector of the roof. This court, finding an obvious and easily avoidable risk, stated:
The duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and a potentially dangerous condition that should be obvious to all is not unreasonably dangerous. Thornton v. Board of Sup'rs of Louisiana State University, 29,898 (La.App.2d Cir.10/29/97), 702 So.2d 72; Shaw v. Fidelity & Casualty Insurance Co., 582 So.2d 919 (La. App. 2d Cir.1991). Where a risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable. Butzman v. Louisiana Power and Light Co., Inc., 96-2073 (La.App. 4th Cir.4/30/97), 694 So.2d 514; Robertson v. State ex rel. Department of Planning and Control, 32,309 (La.App.2d Cir.12/10/99), 747 So.2d 1276, writ denied, 00-0041 (La.2/25/00), 755 So.2d 882; Thornton, supra.

Generally speaking, any sloped roof presents a risk that requires persons to take reasonable precautions in climbing on the roof. The defense in this case presented evidence that this obvious risk associated with roof work is heightened in the case of any extension roof or canopy. This is because the canopy may not be built on an extension of the roof rafters or attached to the rafters in a manner secure enough to support the weight of a person. Carroll seizes upon this heightened risk and instability, which was present in this canopy, as proof that an unreasonable risk of harm existed. We disagree.
The canopy was built for the purpose of diverting rainwater away from the doorway. It was not unstable so as to present an unreasonable risk of harm for its intended purpose for persons using the doorway. The canopy had been earlier re-shingled without unreasonable risk to Carroll's personnel. Because of a roofer's inability to know the strength of the construction of a canopy, precautions must be taken. Nevertheless, the burden of taking such precautions against the possibility of weakness in the canopy structure is minimal. Most significant, the heightened risk of a canopy structure, particularly one braced in the manner of the Holts' canopy, was shown by the evidence to be an obvious risk to roofers.
The obviousness of the canopy's danger is also significant in answering Carroll's further contentions regarding Mr. Holt's aid to Carroll at the time of his fall and the use of Mr. Holt's ladder. The water leak was near the area of the canopy so that at the time of the accident, the parties were inspecting the site to locate the problem. Mr. Holt testified that before Carroll's arrival, he had climbed the ladder at a location up against the house on the side of the canopy to get onto the roof. He testified he avoided putting his weight on the canopy and would not use the canopy as a place to mount the roof.[2] Nevertheless, Mr. Holt testified that in the course of Carroll's inspection of the canopy, while Mr. Holt was supporting the ladder in a location apparently under the *1199 edge of the canopy, Carroll climbed directly onto the canopy and immediately fell.
From our review of Mr. Holt's testimony, we do not find that Mr. Holt, who was eighty-years-old at the time, recommended or insisted that Carroll climb onto the canopy at that crucial point. A fair reading of his testimony is that he simply offered Carroll the use of his ladder for Carroll's inspection of the problem. He was supporting the ladder as Carroll climbed at a place where Mr. Holt would not have mounted the roof. Nevertheless, Mr. Holt's testimony indicates that he did not know whether Carroll climbed at that location merely to inspect the canopy from the ladder or to mount the roof. At the time of the accident, Carroll was fully in charge of the inspection process. He was the roofer. Mr. Holt did not have a duty to direct Carroll's actions and did not mislead Carroll into trusting the stability of the canopy. Again, the potential weakness in the canopy, which was established by the testimony of several expert witnesses, should have been obvious to Carroll under the circumstances. The jury's finding of no liability under these circumstances may not be set aside for manifest error.

Conclusion
For the foregoing reasons, the judgment of the trial court in favor of the defendants, Robert Holt, Dorothy Holt, and State Farm Insurance Companies, is affirmed. Costs are assessed against the plaintiffs, Ronald Gene Carroll and Billie Ruth Carroll.
AFFIRMED.
NOTES
[1] Mr. Bizet was initially named as a party defendant, but he was dismissed from the suit because he had filed bankruptcy.
[2] While Mr. Holt admitted that he would not climb upon the canopy, he also testified that he had never been told by Mr. Bizet whether or not the canopy had been constructed in a manner to support the weight of a person.