956 So.2d 802 (2007)
Stephen McCOY, Plaintiff-Appellant
v.
LIBERTY MUTUAL LIFE INSURANCE COMPANY, American States Insurance Company, Brian A. Grill and Donna Grill, and James Gordon, Defendants-Appellees.
No. 42,118-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2007.
*803 W. Brett Cain, Shreveport, for Appellant.
Joseph P. Williams, Metairie, for Appellees, James Gordon and American States Insurance Co.
Caldwell Roberts, Jr., Shreveport, for Appellees, Liberty Mutual Fire Insurance Company, Brian A. Grill and Donna Grill.
*804 Before STEWART, CARAWAY and MOORE, JJ.
CARAWAY, J.
A heating and air conditioning contractor who fell down a flight of temporary stairs while working at a home construction site filed suit for damages against the framing contractor and owner of the home. The trial court granted summary judgment in favor of both defendants and their insurers finding that the flight of stairs located in a home construction site did not create an actionable hazard. Finding no error in the trial court ruling as a matter of law, we affirm.

Facts
As part of the construction of their new home, Donna and Brian Grill secured the services of Stephen McCoy, a heating and air conditioning system contractor.[1] Brian Grill acted as his own contractor for the home project and he also hired framing contractor, James Gordon, to frame the house. Gordon had assisted Grill with the construction of two prior homes. Because the house was to have two stories, Gordon constructed the initial frame for the staircase to allow access to the second floor pending the finishing of the stairway at the end of construction. The temporary staircase was made of 2×8 tread boards, 40 inches wide, nailed onto three support stringers. The staircase rose from the ground floor slab to an intermediate landing where it turned and led to the second floor. The structure had no handrails. The testimony indicates that the stringers were eventually used in the finished staircase with oak treads and railings.
On June 6, 2004, while in the process of installing a heating/cooling system at the construction site, McCoy fell down the flight of temporary stairs onto his lower back breaking his coccyx and right wrist bone. Ten months after the accident he underwent back surgery. Seeking to recover damages for his injuries, McCoy instituted suit against the Grills and their liability insurer, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), and Gordon and his liability insurer, American States Insurance Company ("American"), alleging that the stairs created an unreasonable risk of harm.
The Grills and Liberty Mutual sought summary judgment urging that they were not liable for the actions of Gordon over whom they retained no operational control. In support of the motion, the Grills included the depositions of Brian Grill, Gordon and McCoy and a photograph of the stairway. Gordon and American also sought summary judgment arguing that the stairs did not present an unreasonably dangerous condition based upon McCoy's knowledge of the lack of handrails. Further, Gordon and American argued that Gordon owed no duty to McCoy who was injured during a normal risk that was associated with his regular job duties.
Five days prior to the scheduled hearing on the motion for summary judgment, McCoy filed his opposition to the summary judgment. He attached a letter from Curtis Chambers, CSP, which expressed his opinion that the stairway violated the Occupational Safety and Health Administration ("OSHA") standards due to the lack of handrails. The Grills and Liberty Mutual filed a motion to strike the letter on the grounds that it did not constitute admissible summary judgment evidence and was untimely filed.
At the hearing on the motions, the parties reiterated their arguments regarding the validity of the Chambers letter and in support of and opposition to the summary *805 judgment. Ultimately, the court rejected McCoy's argument and granted summary judgment in favor of the defendants ruling as follows:
Motion for Summary Judgment against both those defendants is granted, sir . . . I justI don't think there's any genuine issue of material fact. If all allegations are true and if I consider this report to be true written by Mr. Curtis Chambers, I just don't think it creates, and I'm going to say for the record, a genuine issue of material fact based on if all the findings are in favor of what he says, it's a construction site, it's not a completed building and that's just not a hazard that I think that the law would allow recovery for.
McCoy appealed the judgment urging that the opinion of Chambers, stating that the lack of handrails on the temporary stairway violated OSHA standards, raised a material issue of fact regarding the unreasonably dangerous condition of the stairway. McCoy also argues that because the defendants did not object to the trial court's consideration of Chambers' letter or raise the issue by way of answer to the appeal, they are precluded from now doing so on appeal. The defendants restate the arguments they made in support of their motions for summary judgment and Grill's and Liberty Mutual's motion to strike Chambers' letter.

Discussion
Louisiana courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Pursuant to a 1996 amendment to the summary judgment article, the summary judgment procedure is now favored under our law. La. C.C.P. art. 966(A)(2); Costello, supra.
This case presents a negligence claim. La. C.C. art. 2317 states that persons are responsible for damages caused by things in their custody. The Civil Code further states this principle with regard to the owners of buildings in Article 2322, as follows:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. . . .
As a part of the 1996 tort revision, the law of strict liability was altered by the addition of the requirement of knowledge on the part of the owner or custodian of the thing. See Jackson v. Gardiner, 34,643 (La.App.2d Cir.4/4/01), 785 So.2d 981. This revision establishes a negligence standard where the owner's duty is to exercise reasonable care to recognize and repair or remove a vice or defect in the building which presents an unreasonable risk of harm to others. Id. at 985.
*806 A defect under Article 2322 cannot be inferred simply because an accident occurred. Carroll v. Holt, 36,615 (La. App.2d Cir.12/11/02), 833 So.2d 1194; see Sanders v. Bain, 31,362 (La.App.2d Cir.12/9/98), 722 So.2d 386; Dufour v. E-Z Serve Convenience Stores, Inc., 98-996 (La.App. 5th Cir.3/30/99), 731 So.2d 915. The question of a defect turns on whether the thing presents an unreasonable risk of harm. There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. To assist the trier-of-fact, many factors are to be considered and weighed, including: (1) the claims and interests of the parties; (2) the probability of the risk occurring; (3) the gravity of the consequences; (4) the burden of adequate precautions; (5) individual and societal rights and obligations; and (6) the social utility involved. Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002, 1012; Pepper v. Triplet, 03-0619 (La.1/21/04), 864 So.2d 181, 190. The method for determining whether a thing under garde poses an unreasonable risk of harm is similar to that of taking into account all of the social, moral, economic and other considerations as would a legislator regulating the matter, and the analysis is virtually identical to the risk-utility balancing test used in both negligence and product liability theories. Pepper v. Triplet, supra.
The owner of a building cannot be held responsible for all injuries resulting from any risk posed by his building, only those caused by an unreasonable risk of harm to others. Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983). Where a risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable. Jackson, supra.
Jackson, supra, involved a damaged roof and a fall by an inspector of the roof. As in the present case, this court determined that the facts regarding the condition of the premises and the accident were undisputed so that summary judgment was appropriate. In determining no unreasonable risk of harm, we noted that the injured plaintiff was not an innocent passerby or guest, but one who had contracted services regarding the defective roof in question. Additionally, the damaged roof with recent storm debris remaining on its surface presented an obvious risk that the plaintiff chose to encounter. We concluded that plaintiff "did not show how the risk posed by the obviously dangerous condition of the building's roof, resulting from the storm damage, presented an unreasonable risk of harm." Id. at 986.
In similar cases involving construction site accidents or work on buildings, courts have found no unreasonable risk of harm where the temporary condition of the work in progress made the risk obvious. Barron v. Webb, 29,707 (La.App.2d Cir.8/20/97), 698 So.2d 727; Dauzat v. Thompson Const. Co., Inc., 02-989 (La. App. 5th Cir.1/28/03), 839 So.2d 319; McCart v. Sears, Roebuck and Co., 460 So.2d 1104 (La.App. 2d Cir.1985). The rationales of Barron and Dauzat did not expressly employ the utility/risk analysis to the ongoing temporary conditions of the construction site finding that such risky conditions do not constitute a building defect as contemplated by Civil Code Article 2322. "There is no liability for `ruin' during the construction of a building." Dauzat, supra at 322.
In this case, McCoy was providing his installation services in the home after its initial framing. There was no drywall covering the studs of the walls and the staircase was roughly framed. In his deposition McCoy acknowledged that for purposes of his work, stairways at construction sites were used to get the large air conditioning unit, equipment and duct *807 work to the second floor. Gordon explained in his deposition that the existence of handrails would have impeded the lifting of materials or equipment employed in the construction of the upper floor. McCoy admitted that at approximately 50% of his construction jobs no such handrails existed, that he had navigated these very stairs prior to this incident, and that a co-worker had just warned him to be careful before he fell.
Admittedly, a temporary flight of stairs without handrails poses a risk which would require the exercise of precaution. Nevertheless, the lack of handrails on this temporary flight of stairs at a construction site creates a risk that is obvious to the contractors of the job. Our Supreme Court in its important Entrevia ruling, supra, examined another flight of stairs that collapsed at an abandoned farm house causing injury. Employing the unreasonable risk of harm test for a trespasser's claim, the court found no suggestion "that the property posed any dangers other than those typically associated with a somewhat rundown old farm house." Id. at 1150 (emphasis added). The risk presented to McCoy in this instance is "typically associated" with the job sites he routinely encountered and was not a defect in the premises posing an unreasonable risk of harm.
Also, consideration of the economic interests of this construction site setting that brought McCoy to the job as an independent contractor and caused Gordon and the Grills to avoid expense of cumbersome precautions leads to the conclusion that an unreasonable risk of harm was not present. The somewhat risky state of the staircase under construction was necessary and served a useful purpose for the construction efforts. There is no fault attributable to the Grills, as owners of the building, under the circumstances.
Likewise, under a duty/risk analysis,[2] we find no negligence by Gordon in the construction of the staircase. The stairs were not alleged to be unstable. Gordon was a separate independent contractor with no contractual relations with McCoy. While McCoy asserts a duty by Gordon to construct the staircase with handrails to guard against falls by other workers, we find no such duty. Having held under the risk/utility analysis that no unreasonable risk of harm existed on the owners' property, we will not formulate a rule of conduct or duty applicable to the framing contractor concerning the very same risk.
Finally, the issue regarding alleged OSHA violations was inappropriately presented in non-affidavit form by plaintiff's expert and inadequately briefed. La. C.C.P. art. 967 requires that evidence in opposition to the summary judgment motion be presented by affidavit. Legal issues not briefed are considered abandoned. U.R.C.A. Rule 2-12.4. Other than citing certain provisions of the Code of Federal Regulations, plaintiff makes no review of the federal law demonstrating the *808 application of OSHA regulations in this setting. The main thrust of the issue was not a matter for plaintiff's lay expert but for legal argument and explanation regarding OSHA's application to an independent contractor's accident in a non-employment setting.

Conclusion
The trial court's findings of no material fact disputes and the absence of an unreasonable risk of harm were correct and support its grant of summary judgment in favor of defendants. Costs of appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] McCoy's business name was McCoy's AC and Heating d/b/a Stephen C. McCoy.
[2] Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis, which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was damaged (the damages element). Hanks v. Entergy Corp., 06-477 (La.12/18/06), 944 So.2d 564; Lemann v. Essen Lane Daiquiris, Inc., 05-1095, p. 7 (La.3/10/06), 923 So.2d 627, 633.