873 So.2d 872 (2004)
Gracie Gail DURMON and James Wesley Durmon, Plaintiffs-Appellants,
v.
Michael BILLINGS, et al., Defendants-Appellees.
No. 38,514-CA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
Rehearing Denied June 17, 2004.
*873 Cady & Cady by W. Michael Cady, Shreveport, for Appellants.
Mayer, Smith & Roberts, L.L.P. by Kim Purdy Thomas, Shreveport, for Appellees.
Before WILLIAMS, STEWART & PEATROSS, JJ.
PEATROSS, J.
This personal injury action arises out of Plaintiff Gracie Gail Durmon's injury sustained when she fell while going through the corn field "MaiZE" on Sentell Road in Dixie, Louisiana, in 2002. The trial court granted summary judgment in favor of Defendants, Michael and Lei Lani Billings ("the Billingses"), the owners of the MaiZE, and Western World Insurance Company ("Western"), insurer of the MaiZE. In addition, the trial court denied Plaintiffs' motion for partial summary judgment on the issue of Western's alleged bad faith in failing to disclose the existence of a policy of insurance it had issued to the MaiZE that possibly provided coverage for Mrs. Durmon's injuries. Plaintiffs appeal both rulings. For the reasons stated herein, we affirm.

FACTS
The following facts are undisputed. In 2002, Michael and Lei Lani Billings leased a parcel of land on Sentell Road in Dixie and bought a franchise for a corn field maze called the "MaiZE." The MaiZE consists of paths cut in a corn field where people pay admission to attempt to find their way out of the maze of paths. Mr. Billings constructed the MaiZE and opened for business at the beginning of the Fall/Halloween season. The MaiZE totaled *874 five miles of pathways and had three separate phases: (1) a short and easy maze; (2) a longer, more difficult haunted maze; and (3) the longest and most complicated maze. During the second phase of the MaiZE, among other scary exhibits, a man dressed in costume as "Jason" from the movie Friday the Thirteenth (wearing an orange jumpsuit and white hockey mask) scares participants with a chainsaw (from which the chain had been removed).
One could purchase tickets for admission to one or more phases of the MaiZE. There are employees of the MaiZE called "corn cops" stationed throughout the maze to assist patrons when necessary. The rules of the MaiZE are told to all patrons before enteringrunning, pushing and shoving are specifically prohibited.
On October 11, 2002, Plaintiff Gracie Durmon accompanied the youth group from her church to the MaiZE. It had been raining over the last several days in Caddo Parish and the church group had called to verify that the MaiZE would be open that night. The group paid for admission to phases one and two (the haunted phase) of the MaiZE. Separate fees were charged for admission to each phase of the MaiZE; in other words, an additional fee was paid for admission to phase two.
The group began its adventure through phase one of the MaiZE at approximately 7:00 p.m. While venturing through phase one of the MaiZE, Mrs. Durmon noticed that the paths were muddy, but did not complain to anyone about the condition of the paths. After reaching the end of phase one, despite her knowledge of the muddy paths, Mrs. Durmon chose to continue into the haunted phase two of the MaiZE. Mrs. Durmon was aware before entering phase two that the aim of this phase was to scare the participant. Mrs. Durmon heard the chainsaw during her adventure through phase one, so she was aware that a chainsaw was used in the haunting of phase two. Around 9:15 p.m., as Mrs. Durmon was nearing the exit of phase two, "Jason" approached her holding the running chainsaw over his head. Mrs. Durmon attempted to turn and run when she fell and broke her leg in the area of her ankle.[1] There was no physical contact between "Jason" and Mrs. Durmon.
Mrs. Durmon and her husband filed suit against the Billingses and Brett Herbst, from whom the Billingses purchased the franchise, for damages resulting from her injury. In the petition, Mrs. Durmon alleged that her injuries were a direct result of the negligence of the owners of the MaiZE and that the cornfield presented an unreasonably dangerous condition on the night of her fall, i.e., the paths were muddy from recent rain, and the Billingses knew of the dangerous condition and failed to correct it or warn her of the same. Mrs. Durmon subsequently amended her petition, adding Western as a defendant. Defendants Billingses and Western filed a motion for summary judgment alleging that the undisputed facts of this case do not allow recovery for Mrs. Durmon as a matter of law. Plaintiffs filed a motion for partial summary judgment on the issue of the alleged bad faith of Western under La. R.S. 22:1220.[2] *875 The trial court granted the Billingses' and Western's motion for summary judgment, finding that, while there was evidence that the paths were muddy, the evidence did not support the conclusion that the paths presented an unreasonably dangerous condition. The trial court further stated that the muddy conditions would have been equally visible and apparent to Mrs. Durmon as to Mr. Billings and further stated that the evidence did not support that Mr. Billings or any of his employees were negligent in causing Mrs. Durmon's accident. Finally, the trial court denied Mrs. Durmon's motion for partial summary judgment on the issue of the alleged bad faith of Western.

DISCUSSION
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the mover; however, if the mover will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, then the mover may merely point out to the court that there is an absence of factual support for one or more elements essential to the plaintiff's claim. The burden then shifts to the non-moving party to present evidence demonstrating that genuine issues of material fact remain. La. C.C.P. art. 966 C(2); Racine v. Moon's Towing, 01-2837 (La.5/14/02), 817 So.2d 21; Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606. Once the burden has shifted, the opponent must produce factual support to avert the summary judgment. If the opponent fails to produce such evidence, summary judgment is mandated. La. C.C.P. art. 966 C(2); Racine, supra; Garsee v. Bowie, 37,444 (La.App.2d Cir.8/20/03), 852 So.2d 1156.
Appellate review of the grant or denial of summary judgment is de novo. Ross v. Conoco, Inc., 02-0299 (La.10/15/02), 828 So.2d 546.

The Billingses' and Western's Motion for Summary Judgment
The Billingses' and Western's motion for summary judgment alleged, and they assert on appeal, that none of the material facts in this case are in dispute. They argue that, based on the undisputed facts, there was no duty owed to Mrs. Durmon to protect her from her reactions as she *876 ventured through the haunted maze, nor was there any duty on the part of the Billingses to correct or warn of any alleged unreasonably dangerous (muddy) conditions at the MaiZE. We agree.
Attached to the motion for summary judgment were excerpts from the deposition of Mr. Billings, Mrs. Durmon and Joshua Johnson. These items do not contradict the factual statements enumerated earlier in this opinion. In opposition to the motion for summary judgment, Mrs. Durmon submitted the affidavit of Dr. Wayne Hudnall summarizing his findings from a "Soil Investigation Report" he completed on the soil at the MaiZE. The affidavit states that there were heavy rains "in Caddo Parish" the two days prior to the accident and that the pathways of the MaiZE were slippery on the day Mrs. Durmon fell. There were several low, muddy spots leading up to the area where she fell. The affidavit also mentions sharp rocks protruding from the pathways. Dr. Hudnall opined that these factors created an unreasonably dangerous condition that caused Mrs. Durmon's fall. According to Dr. Hudnall, the spreading of sand along the pathways and the removal of the rocks were inexpensive, economical ways to improve the condition and eliminate the hazards.
Approximately 1500 patrons went through the MaiZE on the night of the accident and there were no other reported falls. The only other reported accident or fall during the entire season was a fall sustained by a lady with only one legand she was not injured.

Liability under La. C.C. article 2317 and 2317.1
Art. 2317. Acts of others and of things in custody
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
Art. 2317.1. Damage caused by ruin, vice, or defect in things
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
There is no dispute that the Billingses had garde of the MaiZE and that the paths were muddy the night Mrs. Durmon fell and was injured. The fact that an accident occurred as a result of a defect, however, does not elevate the condition of the thing to that of an unreasonably dangerous defect. Alexander v. City of Baton Rouge, 98-1293 (La.App. 1st Cir.6/25/99), 739 So.2d 262, writ denied, 99-2205 (La.11/5/99), 750 So.2d 188, citing Shipp v. City of Alexandria, 395 So.2d 727 (La. 1981). The past accident history of the defect in question is a factor to be taken into consideration in determining the relative risk of injury. The degree to which a danger may be observed by a potential victim is another factor considered in the determination of whether a condition is unreasonably dangerous. Alexander, supra, citing Wallace v. Slidell Memorial Hosp., 509 So.2d 69 (La.App. 1st Cir.1987).
In determining whether a defect or unreasonable risk of harm is present, the jurisprudence notes that the defect must be of such a nature as to constitute a *877 dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Jackson v. Gardiner, 34, 643 (La.App.2d Cir.4/4/01), 785 So.2d 981, citing Penton v. Schuster, 98-1068 (La. App. 5th Cir.3/30/99), 732 So.2d 597. The duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and a potentially dangerous condition that should be obvious to all is not unreasonably dangerous. Thornton v. Board of Supervisors of Louisiana State University, 29,898 (La. App.2d Cir.10/29/97), 702 So.2d 72, citing Butzman v. Louisiana Power and Light Co., Inc., 96-2073 (La.App. 4th Cir.4/30/97), 694 So.2d 514. This court and other circuits have consistently held that, where a risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable. Carroll v. Holt, 36,615 (La.App.2d Cir.12/11/02), 833 So.2d 1194;
Robertson v. State ex rel. Department of Planning and Control, 32,309 (La.App.2d Cir.12/10/99), 747 So.2d 1276, writ denied, 00-0041 (La.2/25/00), 755 So.2d 882; Tucker v. American States Insurance, 31,970 (La.App.2d Cir.9/22/99), 747 So.2d 620; Thornton, supra; Butzman, supra; Henshaw v. Audubon Park Com'n, 605 So.2d 640 (La.App. 4th Cir.1992), writ denied, 607 So.2d 570 (La.1992).
In Thornton, supra, this court affirmed summary judgment in favor of the owner of a concrete walkway. The plaintiff, Mrs. Thornton, was injured when she slipped and fell on leaves that had accumulated on the walkway. This court concluded that summary judgment was proper because Mrs. Thornton admitted in her deposition that she was aware of the leaves on the walkway and the possible danger they could pose. Despite this knowledge, Mrs. Thornton chose to walk over the leaves. Likewise, in the case sub judice, Mrs. Durmon's deposition testimony establishes that she was aware of the muddy condition of the paths of the MaiZE from her adventure through phase one. She testified that there were "corn cops" who had flashlights stationed throughout the MaiZE to assist patrons. Mrs. Durmon acknowledged the possible danger of walking on the muddy paths, but did not complain of or report the condition to anyone. Despite her knowledge of the mud, Mrs. Durmon chose to continue into phase two of the MaiZE. Specifically, Mrs. Durmon testified as follows:
Q: Did [the mud] cause you any concern?
A: As far as what aspects?
Q: That you were unsteady, unstable on your feet. It was so slippery you thought you were going to fall, that you thought your foot would become lodged in the mud, that you were going to ruin your shoes? I mean, did it give you any cause for concern?
A: Not actually.

* * *
Q: Whatever happened to you in phase 1 when you encountered the slippery or muddy condition did not affect your decision to go into phase 2, is that right?
A: No.

* * *
Q: You were aware then that the mud posed a potential problem for you in terms of your ambulation, walking?
A: Yes.
In addition, Mrs. Durmon admitted that there was "probably not" any difference between the terrain of phase one and phase two. This testimony establishes that the condition of the paths of the *878 MaiZE were as obvious to Mrs. Durmon as to the landowner and any other patron present that night. "If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff." Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533 (La.2/20/04), 866 So.2d 228. This is such a case. Finding no duty owed by the Billingses to Mrs. Durmon regarding the muddy condition of the paths, we conclude that summary judgment was properly granted in favor of the Billingses and Western.[3]
Negligence
Negligence is examined under a duty/risk analysis. The duty/risk analysis consists of four parts: (1) cause-in-fact, (2) existence of a duty, (3) breach of duty, and (4) whether the risk, and harm caused, was within the scope of protection afforded by the duty breached. Pitre v. Louisiana Tech University, 95-1466, 95-1487 (La.5/10/96), 673 So.2d 585, cert. denied, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996); Roberts v. Benoit, 605 So.2d 1032 (La.1991). The existence of a duty is a question of law. Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La.1993); Roberts, supra.
In the instant case, the trial court found no evidence suggesting that the Billingses or any of their employees were "negligent or at fault in Incausing this accident." Mrs. Durmon argues that there are material facts at issue and that the trial court improperly engaged in credibility determinations at the summary judgment stage of the proceedings. We disagree. While our de novo review of the evidence submitted in support of and in opposition to the motion for summary judgment reveals some discrepancy in how close "Jason" came to Mrs. Durmon and his actions after her fall and in the amount of rain that had fallen in the days prior to the night of Mrs. Durmon's accident, these are not material facts bearing on any of the elements of negligence in this case. Even accepting Mrs. Durmon's version of events as true for purposes of our review, we conclude that there was no duty owed to Mrs. Durmon under the circumstances of this case.
All persons have a general duty to act in a reasonable fashion so as to avoid harming others. La. C.C. art. 2316. The proper test to determine landowner liability is whether in the management of his property, he has acted as a reasonable man in view of the probability of injury to others. Tucker, supra. More specifically, the question of what duty is owed to patrons of a haunted event has been summarized by the fifth circuit as follows:
It is well settled that assumption of the risk is no longer a valid defense under Louisiana law and that the plaintiff's knowledge and conduct are considered only to determine the extent of his comparative negligence. Thus, as set forth in Murray [v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988) ], a duty/risk analysis *879 is first used to determine if the defendant is liable to plaintiff. Where there is no duty on the part of the defendant to protect the plaintiff from the risk involved, there can be no liability under a duty/risk analysis. The scope of the duty is a question of law and based on policy questions as to whether the particular risk falls within the scope of the duty. The key to a finding of no liability is not the plaintiff's subjective awareness of the risk, but the determination that the defendant did not act unreasonably vis-a-vis the plaintiff, or injure the plaintiff through the instrumentality of an unreasonably dangerous thing in his custody.
As in premises used for athletic events, the owner or occupier of a Halloween haunted house is not the insurer of those participating in the event nor is he required to eliminate every source of the possibility of danger. A party's obligation to participants is to maintain the premises in a fashion commensurate with ordinary and reasonably care.
(Emphasis in original.)

Galan v. Covenant House of New Orleans, 96-1006 (La.App. 5th Cir.5/14/97), 695 So.2d 1007, citing Mays v. Gretna Athletic Boosters, Inc., 95-717 (La.App. 5th Cir.1/17/96), 668 So.2d 1207.
In Galan, a patron of a haunted house who had exited the house and thought that the "haunting" was over, was approached by "Jason" with a chainsaw and reacted to the point of injuring herself. The court found that the fact that the patron did not expect the last exhibit ("Jason") did not make the exhibit unreasonable. Significantly, the plaintiff in Galan admitted that the purpose of the haunted house was to frighten and that she was in a visqueen covered "alleyway" exiting the house when the "Jason" scared her. For these reasons, the fifth circuit ultimately found that the operator of the haunted house had no duty to guard against the patron's reactions to being frightened at any point while at the haunted house.
The case sub judice is strikingly similar to Galan. Mrs. Durmon was nearing completion, but had not yet exited, phase two of the MaiZE. She admitted that the purpose of phase two of the MaiZE was to scare, surprise and startle the patrons and she expected to be frightened. In addition, Mrs. Durmon testified that she heard the chainsaw before entering phase two and, therefore, knew that a chainsaw was used in the haunting. The fact that the haunting in this case was done in a cornfield as opposed to a house is a distinction without import. Likewise, we are not persuaded to discount the instruction of Galan because it involved a charitable function as opposed to a private business venture. In all cases, as the Galan court noted, patrons at a haunted event "are expected to be surprised, startled and scared by the exhibits and the operator does not have a duty to guard against patrons reacting in bizarre, frightened and unpredictable ways." Accordingly, we find that no duty was owed by the Billingses to Mrs. Durmon in this case to warn or protect her from her reaction to being frightened by "Jason," an experience she expected to have and for which she paid an additional admission fee. The trial court properly granted summary judgment in favor of the Billingses and Western.
In light of our conclusion upholding the trial court's grant of the Billingses' and Western's Motion for Summary Judgment, the propriety of its ruling on Plaintiffs' Motion for Partial Summary Judgment is moot.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment *880 in favor of Defendants Michael and Lei Lani Billings and Western World Insurance Company is affirmed. This conclusion renders Plaintiffs' Motion for Partial Summary Judgment moot. Costs are assessed to Plaintiffs, Gracie Gail Durmon and James Wesley Durmon.
AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY, and PEATROSS, JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.
NOTES
[1] Mrs. Durmon fractured her tibia and fibula requiring surgery to repair the injury.
[2] La. R.S. 22:1220 provides as follows:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair
dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
* * *
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
* * *
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings
[3] We note that Mrs. Durmon argues on appeal that the presence of rocks in the paths contributed to the alleged unreasonably dangerous condition of the paths. While there seems to be no dispute that rocks were present, there was no evidence presented that Mrs. Durmon's fall was in any way caused by her stepping or slipping on or tripping over a rock of any sort. In addition, Mrs. Durmon argues on appeal that the allegedly defective chainsaw was an unreasonably dangerous thing in the custody of defendants that "could" have caused her injury, either alone or in combination with the muddy condition of the paths. The undisputed fact, however, is that there was no physical contact between Jason or the chainsaw and Mrs. Durmon. There is no evidence that the chainsaw itself contributed to or caused Mrs. Durmon's injury.