945 So.2d 233 (2006)
ESTATE OF Margaret LOVELESS, Deceased, Thru the Administrator, Tim LOVELESS, et al., Plaintiffs-Appellants
v.
Jesse Hunter GAY and HCA Health Services of Louisiana dba North Monroe Medical Center, Defendants-Appellees.
No. 41,575-CA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
*234 Hayes, Harkey, Smith & Cascio, L.L.P. by C. Joseph Roberts, III, Monroe, for Plaintiffs-Appellants.
John B. Hoychick, Rayville, for Defendant-Appellee, Jesse Hunter Gay.
Ungarino & Eckert L.L.C. by Brian D. Smith, Christopher B. Joffrion, Shreveport, J. Michael Nash, for Defendant-Appellee, HCA Health Services of Louisiana, Inc. dba North Monroe Medical Center.
Before STEWART, GASKINS and LOLLEY, JJ.
GASKINS, J.
The plaintiffs, the heirs and the estate of Margaret Loveless, appeal a grant of summary judgment in favor of the defendant, North Monroe Medical Center (NMMC). For the reasons set forth below, we affirm.

FACTS
In October 2004, Mrs. Loveless was a patient at NMMC undergoing rehabilitation following hip replacement surgery. On the evening of October 16, 2004, a 1969 Ford pickup truck operated by Jesse Hunter Gay left a curved portion of Old Sterlington Road adjacent to NMMC, crossed a ditch, a parking lot, and a curb. *235 The vehicle crashed through the wall of Mrs. Loveless' hospital room, striking her and causing fatal injuries. The plaintiffs allege that Mr. Gay was intoxicated at the time of the accident.
In September 2005, the plaintiffs filed suit against Mr. Gay and NMMC, alleging both negligence and strict liability claims against NMMC. The strict liability claims under La. C.C. art. 2317.1 were based on the argument that the medical center was geographically located at a site unreasonably susceptible to such accidents and that the medical center was not designed or constructed to protect occupants from this danger. The plaintiffs also alleged that NMMC knew or should have known of the vice, defect or ruin of the physical structure and had experienced similar events in the past.
NMMC denied the plaintiffs' allegations, and subsequently filed a motion for summary judgment. NMMC argued in its motion for summary judgment that the question before the court was one of duty; NMMC phrased the issue as follows:
[T]he court must decide if there is foreseeability in law of an injury to a person inside a building by being struck by a motor vehicle operated by an intoxicated driver who left the roadway, traveling more than three hundred feet, out of control, crossing a ditch, striking a tree, crossing a curb, a parking lot, another curb, striking a light pole, and then striking the side of a building.
NMMC argued that such a scenario was not "foreseeable in law," and that the hospital had no duty to protect Mrs. Loveless from the actions of Jesse Gay.
In support of the motion for summary judgment, NMMC attached the deposition of Officer Jeffrey L. Sanders of the Monroe Police Department who investigated the accident. Officer Sanders' deposition testimony essentially corroborated the factual statements in NMMC's motion for summary judgment concerning the manner in which the accident occurred and Mr. Gay's apparent intoxication. Several photographs of the accident scene, an offense report, and a crime lab report on Mr. Gay's blood alcohol level were attached to Officer Sanders' deposition testimony.
The plaintiffs filed an opposition to the motion for summary judgment, making arguments concerning both the procedural posture of the case and the substantive issues. As to the procedural posture, the plaintiffs stated that they had obtained a police report showing a prior similar incident in which a vehicle had left the roadway and struck the hospital in July 1996. The report was attached to the plaintiffs' opposition to the motion for summary judgment. The plaintiffs argued that, despite NMMC's denial regarding prior incidents, the information obtained from the Monroe police department confirmed that the accident involving Mrs. Loveless was not the first instance in which a vehicle failed to negotiate the curve by the hospital and collided with NMMC's building.
Because discovery was not complete, the plaintiffs urged that summary judgment was premature. They attached the affidavit of Tim Loveless, the administrator of Mrs. Loveless' estate, stating that investigation and discovery were ongoing and that he desired his counsel to fully investigate the prior incident to determine whether NMMC took appropriate action to remove patients from "the plausible trajectory path of vehicles that fail to negotiate the Old Sterlington Road curve or, alternatively remove patients from the risk area of the hospital facility." The plaintiffs stated that discovery was only beginning in the case, that there had been no requests to set the matter for trial, and that there were no established discovery deadlines.
*236 NMMC responded with a motion to strike the administrator's affidavit, as well as a police report from July 1996 concerning the other alleged incident. NMMC attacked the affidavit because it was not based on personal knowledge; NMMC also attacked the police report which it characterized as "hearsay within hearsay."
The minutes of court from March 29, 2006, indicate that on that date the motion for summary judgment was taken up and argued, the court granted the motion to strike the police report, and granted summary judgment in favor of NMMC. However, the minutes also specify that the parties declined to have the proceeding recorded by a court reporter. Thus, a transcript of the summary judgment hearing is not part of the record on appeal. Furthermore, while the court's written judgment on the motion for summary judgment indicates that the court considered the pleadings, evidence and argument of counsel, the judgment does not indicate any part of the court's reasoning, and there are no written reasons for judgment.
The plaintiffs appealed the trial court judgment, arguing that the trial court erred in granting summary judgment in favor of NMMC, particularly where discovery was not complete. They also argue that the trial court erred in striking the police report indicating a similar prior accident at NMMC.

POLICE REPORT
We reject the plaintiffs' argument that the trial court erred in striking the police report concerning another accident in 1996. On motions for summary judgment, supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967. Personal knowledge means something which a witness actually saw or heard, as distinguished from something a witness learned from some other person or source. Shelter Insurance Company v. Broan-Nutone, LLC & CBC, Inc., 39,625 (La.App.2d Cir.5/11/05), 902 So.2d 1146, writ denied, XXXX-XXXX (La.12/16/05), 917 So.2d 1112. A police report does not comply with La. C.C.P. art. 967 requiring that supporting and opposing affidavits shall be made on personal knowledge. Charlot v. Alabama Great Southern Railroad Company, XXXX-XXXX (La.App. 4th Cir.6/24/98), 716 So.2d 906, writ denied, 1998-2007 (La.10/30/98), 728 So.2d 387. The plaintiffs failed to provide an affidavit or deposition testimony of the police officer who authored the report or other witnesses, in support of their opposition to the motion for summary judgment. Accordingly, the trial court did not err in striking the police report.

DISCOVERY
The trial court was not premature in granting summary judgment even though the plaintiffs argued that discovery was ongoing. Under La. C.C.P. art. 966, a motion for summary judgment is appropriate only after "adequate discovery." However, it is not an abuse of the trial court's wide discretion in discovery matters to entertain a motion for summary judgment before discovery has been completed. It is within the trial court's discretion to render a summary judgment or require further discovery. Petch v. Humble, 41,301 (La. App.2d Cir.8/23/06), 939 So.2d 499.
If it appears from affidavits of a party opposing a motion for summary judgment that, for reasons stated in the opposition, the party cannot present by affidavit facts essential to justify its opposition, the court may refuse the application for summary judgment or may order a continuance to *237 permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. La. C.C.P. art. 967(C).
The plaintiffs argue that a reasonable and substantial basis existed to decline summary judgment under La. C.C.P. art. 967(C) in order to permit them reasonable latitude to conduct discovery to include the issue of NMMC's knowledge of prior similar accidents and knowledge of the particular danger that resulted in Mrs. Loveless' death.[1]
The pleadings show that the plaintiffs were aware when they filed suit that a similar incident had occurred. The plaintiffs did not ask for a continuance to conduct further discovery. The record shows that the plaintiffs had adequate time to properly develop and attempt to support their contention that NMMC was aware of a prior accident. The trial court acted within its wide discretion in proceeding with the motion for summary judgment.

SUMMARY JUDGMENT
We find that the trial court did not err in granting summary judgment in favor of NMMC. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Durmon v. Billings, 38,514 (La.App.2d Cir.5/12/04), 873 So.2d 872, writ denied, XXXX-XXXX (La.10/29/04), 885 So.2d 588. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the mover; however, if the mover will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, then the mover may merely point out to the court that there is an absence of factual support for one or more elements essential to the plaintiff's claim. The burden then shifts to the nonmoving party to present evidence demonstrating that genuine issues of material fact remain. La. C.C.P. art. 966(C)(2); Racine v. Moon's Towing, 2001-2837 (La.5/14/02), 817 So.2d 21; Hardy v. Bowie, 1998-2821 (La.9/8/99), 744 So.2d 606. Once the burden has shifted, the opponent must produce factual support to avert the summary judgment. If the opponent fails to produce such evidence, summary judgment is mandated. La. C.C.P. art. 966(C)(2); Racine v. Moon's Towing, supra; Garsee v. Bowie, 37,444 (La.App.2d Cir.8/20/03), 852 So.2d 1156; Durmon v. Billings, supra.
Appellate courts review summary judgments de novo, sing the same criteria that govern the district court's determination of whether summary judgment is appropriate. Goins v. Wal-Mart Stores, Inc., XXXX-XXXX (La.11/28/01), 800 So.2d 783.
The plaintiffs state that their lawsuit is grounded in both general negligence and strict liability, the latter dealing with the location of NMMC's facility adjacent to a curve in the roadway, the design of the facility in light of its location, and the existence of an unreasonably dangerous defect in the facility, along with failure to discover and repair it despite prior warning. *238 Upon the facts presented, we find the plaintiffs' claims sound more in negligence than in strict liability. We note that the provisions of La. C.C. art. 2317.1 effectively turn such strict liability claims into negligence claims. See Reitzell v. Pecanland Mall Associates, Ltd., 37,524 (La. App.2d Cir.8/20/03), 852 So.2d 1229; Solito v. Horseshoe Entertainment, 36,667 (La. App.2d Cir.12/18/02), 834 So.2d 610.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and similarly situated parties; the need for an incentive to prevent future harm; the nature of the defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving. Posecai v. Wal-Mart Stores, Inc., XXXX-XXXX (La.11/30/99), 752 So.2d 762.
A hospital has a duty to exercise reasonable care to protect those who enter its premises. This duty extends to keeping the premises safe from unreasonable risks of harm and to adequately warn potential victims of the existence of the danger. Choyce v. Sisters of the Incarnate Word, 25,958 (La.App.2d Cir.8/19/94), 642 So.2d 287, writ denied, 1994-2510 (La.12/9/94), 647 So.2d 1119. A hospital is not an insurer of a patient's safety and is not required to guard against or take measures to avert a situation that a reasonable person would not anticipate as likely to happen under the given circumstances. Lichti v. Schumpert Medical Center, 32,620 (La.App.2d Cir.1/26/00), 750 So.2d 419, writ denied, XXXX-XXXX (La.4/20/00), 760 So.2d 349.
In deciding whether a duty has been violated, the trier of fact must decide whether the defendant's conduct conforms to the standard of a reasonable man under like circumstances; various factors considered in the "reasonable man" analysis include the likelihood of harm, the gravity of harm, the burden of prevention, and the social utility of the defendant's conduct. Meany v. Meany, XXXX-XXXX (La.7/5/94), 639 So.2d 229. Simply stated, an unreasonable risk of harm is one that a reasonable man would take steps to prevent or eliminate.
The Louisiana Supreme Court had adopted a duty-risk analysis to determine whether liability exists under the particular facts presented. Under this analysis, the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached. Under the duty-risk analysis, all four inquiries must be affirmatively answered for a plaintiff to recover. Posecai v. Wal-Mart Stores, Inc., supra. See also Meany v. Meany, supra.
In the present case, NMMC did not breach its duty to exercise reasonable care to keep the premises safe from unreasonable risks of harm. This accident was not a situation that a reasonable person would anticipate as likely to happen under the given circumstances. The likelihood that a vehicle would leave the roadway and travel several hundred feet across a parking lot and other obstacles and crash into a patient's room was not foreseeable. We find that the accident in this *239 case was unforeseeable even considering the alleged prior accident in 1996. If the police report had been considered, it is not clear that the accident occurred at the same point on the hospital building. There was no showing that the prior accident was a circumstance likely to recur. The likelihood of such an accident is too attenuated to warrant preventative measures. To guard against such an unlikely circumstance would require the hospital to become the insurer of the safety of its patients. Further, the plaintiff submitted no evidence that the wall of the hospital was insufficient to withstand ordinary forces that might be expected to be exerted against it. In light of the number of barriers that Mr. Gay traveled through before crashing into the hospital building, it is hard to envision what fortification the hospital could have employed to prevent this accident.
Many businesses are located adjacent to roadways, including roadways that have curves in them. While the possibility always exists that a motorist could leave the roadway and crash into a business, the chances of such an occurrence ordinarily are so remote that a business seldom will be required to take preventive measures against the possibility of such an occurrence.[2] There was no evidence in the instant case either that the placement of the hospital was defective in any way, or that NMMC would not have been justified in concluding that the alleged first incident was a freak accident highly unlikely to recur.[3]

CONCLUSION
For the reasons set forth above, we find that summary judgment was properly granted in favor of NMMC, and we hereby affirm that judgment. Costs are assessed to the plaintiffs.
AFFIRMED.
NOTES
[1] Even were we to consider the police report of the prior accident, the diagram of that accident does not support the plaintiffs' argument that the vehicle traveled the trajectory path of a vehicle failing to negotiate a curve. Instead, the diagram shows the vehicle simply veered off the road.
[2] See Mims v. Bradford, 503 So.2d 1083 (La. App. 2d Cir.1987), writ denied, 504 So.2d 556 (La.1987); Mayeur v. Time Saver, Inc., 484 So.2d 192 (La.App. 4th Cir.1986), writs denied, 486 So.2d 751, 753 (La.1986); Millet on Behalf of Millet v. Knockum, 503 So.2d 51 (La.App. 5th Cir.1987), writ denied, 503 So.2d 1008 (La.1987). See and compare Parish v. L.M. Daigle Oil Company, Inc., XXXX-XXXX (La.App. 3d Cir.6/23/99), 742 So.2d 18.
[3] While not foreseeable in the instant case, circumstances could arise where factors such as the position of a roadway, the placement of a business, the speed limit, and prior accidents could impose a duty upon the building owner to take preventative measures.