[Cite as *Davis v. Dungeons of Delhi*, 2019-Ohio-1457.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| MCKENZIE DAVIS, | : | APPEAL NO.  C-180242 |
| and | : | TRIAL NO.  A-1704819 |
| JENNIFER BLUM , | : | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| DUNGEONS OF DELHI, | : | |
| MARK MATTHEW MATEIKAT, | : | |
| and | : | |
| MARK MATEIKAT, | : | |
| Defendants-Appellees. | : | |


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  April 19, 2019


*The Law Offices of Blake R. Maislin, LLC*, and *Blake R. Maislin*, for Plaintiffs-Appellants,

*Droder & Miller Co., L.P.A.*, *Richard J. Rinear* and *Bradley A. Powell*, for Defendants-Appellees.

**MYERS, Judge.**

{¶1} McKenzie Davis and her mother Jennifer Blum ("the plaintiffs") appeal the trial court's entry of summary judgment in favor of the defendants on the plaintiffs' claims for negligence and civil assault stemming from injuries that Davis sustained at a haunted house attraction. Because genuine issues of material fact remain, we reverse the trial court's judgment.

{¶2} In April 2014, the plaintiffs filed an action against "Delhi Township, Ohio, DBA Dungeons of Delhi," the trustees of Delhi Township, and Mark Matthew Mateikat ("Matt Mateikat"), alleging that the township and its trustees operated a haunted house attraction known as "Dungeons of Delhi," and that Davis was injured when Matt Mateikat, dressed as a ghoul, ran out of the haunted house, chased her, and caused her to fall. The complaint included a demand that the plaintiffs' health insurer be required to assert its subrogation interests.

{¶3} The plaintiffs amended their complaint to name as additional defendants Del-Fair, Inc., the owner of the parcel on which the haunted house was situated, and Boy Scouts of America, Dan Beard Council, Inc., and Learning for Life, Inc., (hereinafter "Boy Scouts"), entities that received funds from the sale of tickets for the haunted house.

{¶4} The plaintiffs amended their complaint again to name as defendants two Delhi Township law enforcement officers Joe Middendorf and Gary Schlomer, Dungeons of Delhi, Mark Mateikat, and John Doe, and alleged that each of them was involved in the operation of the haunted house.

{¶5} The plaintiffs referred to defendants Delhi Township, its trustees, its law enforcement officers Middendorf and Schlomer, and John Doe collectively as "Delhi." The plaintiffs alleged that Mark Mateikat was the father of Matt Mateikat. They alleged that defendant Dungeons of Delhi ("Dungeons") was an unincorporated

association of individuals and/or entities that included Delhi, Matt Mateikat, Mark Mateikat, and John Doe.

{¶6} The plaintiffs asserted negligence claims against Delhi, Dungeons, Del-Fair, Boy Scouts, Dan Beard Council, and Learning for Life. The plaintiffs asserted a civil assault claim against the same defendants and against Matt Mateikat in his individual capacity. The plaintiffs asserted no claims against Mark Mateikat in his individual capacity; he was solely alleged to be a member of Dungeons.

{¶7} In 2015, the plaintiffs dismissed with prejudice their claims against Delhi, Boy Scouts, and Del-Fair, Inc. In March 2016, the trial court granted summary judgment for the Mateikats and denied summary judgment for Dungeons. In January 2017, the plaintiffs filed a Civ.R. 41(A)(1)(a) notice of voluntary dismissal of their complaint.

{¶8} In September 2017, Davis and Blum refiled their action pursuant to Ohio's saving statute, R.C. 2305.19, against all defendants except Boy Scouts and Del-Fair, Inc. Pursuant to local rule, the new action was assigned to the common pleas judge who had been assigned the original action.

{¶9} In the refiled action, the plaintiffs asserted that either Matt Mateikat or John Doe was the costumed employee who chased Davis. The plaintiffs reasserted negligence claims against Delhi and Dungeons. The plaintiffs asserted a civil assault claim against Delhi and Dungeons, and against Matt Mateikat and John Doe in their individual capacities. Again, the plaintiffs asserted no claims against Mark Mateikat in his individual capacity; he was solely alleged to be a member of Dungeons.

{¶10} The plaintiffs dismissed with prejudice their claims against Delhi and their health insurer.

{¶11} The Mateikats filed a motion to dismiss the plaintiffs' claims against them. In December 2017, the trial court converted the motion to dismiss to a motion

for summary judgment and granted summary judgment in favor of the Mateikats. In April 2018, the trial court granted summary judgment in favor of Dungeons.

{¶12} The plaintiffs now appeal, arguing in two assignments of error that the trial court erred by granting the motions for summary judgment.

### A. Effect of the Voluntary Dismissal

{¶13} As a preliminary matter, we must determine the effect of the plaintiffs' January 2017 notice of voluntary dismissal upon their refiled claims against the Mateikats, who had previously been granted summary judgment in their favor. The plaintiffs assert that the March 2016 entry of summary judgment in favor of the Mateikats was not a final appealable order because the entry did not include Civ.R. 54(B) language signifying that there was no just reason for delay and did not satisfy the requirements of R.C. 2505.02. Therefore, they contend, their voluntary dismissal of all claims rendered the interlocutory summary judgment a nullity.

{¶14} An order is final and appealable only if it meets the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus; *State ex rel. Scruggs v. Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, 776 N.E.2d 101, ¶ 5. Civ.R. 54(B) applies where more than one claim for relief is presented or multiple parties are involved, and where the court has rendered a final judgment as to fewer than all claims or parties. *Chef Italiano* at 88. Under Civ.R. 54(B), an entry of judgment involving fewer than all claims or parties is not a final, appealable order unless, in addition to other legal requirements, the court expressly determines that "there is no just reason for delay." Civ.R. 54(B); *Scruggs* at ¶ 6.

{¶15} The trial court's March 2016 entry of summary judgment in favor of the Mateikats did not dispose of the plaintiffs' claims against Dungeons or the plaintiffs' health insurer, so Civ.R. 54(B) applies to the order. Because the court's

4

order did not include the requisite Civ.R. 54(B) certification that there was "no just reason for delay," the order was not final and appealable, even assuming it met the other legal requirements. *See Kelly v. Swoish FT Blue Ash, LLC*, 1st Dist. Hamilton No. C-160461, 2017-Ohio-836, ¶ 7.

{¶16} The Mateikats argue, however, that the March 2016 entry of summary judgment in their favor became final and appealable when the plaintiffs filed their notice of voluntary dismissal pursuant to Civ.R. 41(A)(1)(a). They assert that the voluntary dismissal rendered the interlocutory summary judgment a final appealable order from which the plaintiffs failed to timely appeal.

{¶17} Civ.R. 41(A) states:

(1) *By Plaintiff; By Stipulation.* Subject to the provisions of Civ. R. 23(E), Civ. R. 23.1, and Civ. R. 66, a plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant by doing either of the following:

> (a) filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant;

> (b) filing a stipulation of dismissal signed by all parties who have appeared in the action.

Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits of any claim that the plaintiff has once dismissed in any court.

{¶18} In *Denham v. New Carlisle*, 86 Ohio St.3d 594, 597, 716 N.E.2d 184 (1999), the Supreme Court of Ohio held that a Civ.R. 41(A) voluntary dismissal "nullifies the action only with respect to those parties dismissed from the suit."

Therefore, the court held, a Civ.R. 41(A) dismissal of fewer than all of the defendants in a case caused an interlocutory summary judgment order in favor of the remaining defendants to become final and appealable. After *Denham*, Ohio courts have held that where a plaintiff in a multi-defendant case voluntarily dismisses all defendants, including those for whom the trial court has already granted summary judgment, the prior interlocutory summary judgment order is rendered a nullity. *See Fisher v. Mallik*, 2015-Ohio-1008, 30 N.E.3d 245, ¶ 18 (10th Dist.); *Fairchilds v. Miami Valley Hosp., Inc.*, 160 Ohio App.3d 363, 2005-Ohio-1712, 827 N.E.2d 381, ¶ 38 (2d Dist.); *Toledo Heart Surgeons v. The Toledo Hosp.*, 6th Dist. Lucas No. L-02-1059, 2002-Ohio-3577, ¶ 28; *Blankenship v. Wadsworth-Rittman Area Hosp.*, 9th Dist. Medina No. 02CA0062-M, 2003-Ohio-1288, ¶ 17; *Hutchinson v. Beazer East, Inc.*, 8th Dist. Cuyahoga Nos. 86635 and 87897, 2006-Ohio-6761, ¶ 23; *Fox v. Kraws*, 11th Dist. Lake No. 2009-L-157, 2009-Ohio-6860, ¶ 14-16; *Bradley v. Dollar Gen.*, 2012-Ohio-3700, 975 N.E.2d 515, ¶ 42 (5th Dist.).

{¶19} In this case, the plaintiffs' notice of voluntary dismissal stated, "PLEASE TAKE NOTICE that Plaintiff[s'] Complaint is hereby dismissed, without prejudice as to re-filing pursuant to Civil Rule 41(A)(1)(a)." The notice contained no suggestion that the plaintiffs meant for the dismissal to exclude those defendants for whom the trial court had granted summary judgment. Consequently, we hold that the plaintiffs' Civ.R. 41(A)(1)(a) voluntary dismissal of all defendants rendered the prior interlocutory summary judgment order in favor of the Mateikats a nullity. We therefore address the subsequent grant of summary judgment in favor of the Mateikats on the merits.

### B. The Mateikats

{¶20} In their first assignment of error, the plaintiffs argue that the trial court erred by granting the Mateikats' motion to dismiss, which was converted to a motion for summary judgment.

{¶21} The Mateikats moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Civ.R. 12(B)(6). They argued that the court was required to dismiss them from the refiled action because the court had previously entered summary judgment in their favor in the first action. In the previous action, the court ruled that Dungeons was an unincorporated nonprofit association, and that the Mateikats, as members of the association, were immune from personal liability under R.C. Chapter 1745. However, as discussed above, the summary-judgment determination in the first action was an interlocutory order that became a nullity upon the filing of the Civ.R. 41(A)(1)(a) notice of voluntary dismissal. *See Fisher*, 2015-Ohio-1008, 30 N.E.3d 245, at ¶ 18.

{¶22} Therefore, when the Mateikats' motion to dismiss was converted to a motion for summary judgment, the Mateikats had the initial burden of demonstrating that there were no genuine issues of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). To meet that burden, the Mateikats could not merely make a conclusory assertion that the plaintiffs had no evidence. *See id.* Rather, the Mateikats were required to support their assertion that they were members of an unincorporated nonprofit association with some type of evidence provided for in Civ.R. 56(C).

{¶23} When the Mateikats filed their motion to dismiss, they also filed a motion to transfer the pleadings, discovery, deposition transcripts and videos that had been filed in the plaintiffs' earlier action to the refiled action. This was appropriate because an action refiled under the saving statute is a new action and

does not incorporate the documents filed in the dismissed action. *See Caffie v. Daugherty Med. Group*, 1st Dist. Hamilton No. C-120568, 2013-Ohio-5891, ¶ 6. Even if a refiled action is assigned to the same trial judge as the dismissed action, the necessary documents from the dismissed action must be filed in the new action. *Id.* at ¶ 6-8. In this case, the trial court granted the motion to transfer the record from the dismissed action to the current action, but not until three weeks *after* it granted summary judgment in favor of the Mateikats.

{¶24} The plaintiffs argue that, at the time that the trial court ruled in the Mateikats' favor, the Mateikats had put forth no evidence to establish that Dungeons was an unincorporated nonprofit association under R.C. Chapter 1745. We agree. The court's entry noted that the parties had "submitted the matter upon the record currently before this Court." The record before the court included the plaintiffs' complaint, which asserted that Dungeons was "an unincorporated association" and Dungeons' answer, which asserted that it was "an unincorporated *nonprofit* association." (Emphasis added.) The record did not include any of the evidence from the prior case. Therefore, any finding by the court as to this issue was unsupported by any evidence in the record.

{¶25} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriately granted when there exist no genuine issues of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party. *State ex rel. Howard v. Ferreri,* 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994). "[T]he evidence must be in the record or the motion cannot succeed." *Dresher*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264.

{¶26} The plaintiffs sued Mark Mateikat solely in his capacity as an alleged member of Dungeons. If the trial court was correct in determining that Dungeons was an unincorporated nonprofit association, then Mark Mateikat, if he were a member, could not be held personally liable for any debt, obligation, or liability of Dungeons association. *See* R.C. 1745.10 and 1745.56. The same is true for Matt Mateikat to the extent that he was named in the complaint as a member of Dungeons. However, the statute provides no such protection for Matt Mateikat where he was alleged to be liable for his own actions, i.e., in the assault claim.

{¶27} R.C. 1745.01(M) defines "unincorporated nonprofit association" as follows:

> "Unincorporated nonprofit association" means an unincorporated organization, consisting of two or more members joined by mutual consent pursuant to an agreement, written, oral, or inferred from conduct, for one or more common, nonprofit purposes.

{¶28} Because there was no evidence before the court to establish whether Dungeons was an unincorporated nonprofit association, it was error to grant summary judgment on this basis. And an assault claim against Matt Mateikat in his individual capacity remained. We sustain the first assignment of error.

### C. Dungeons of Delhi

{¶29} In their second assignment of error, the plaintiffs argue that the trial court erred by granting summary judgment in favor of Dungeons. Unlike the ruling in favor of the Mateikats, the trial court had the entire transferred record before its ruling.

{¶30} Dungeons' summary-judgment motion asserted that the plaintiffs' claims were barred by the doctrines of primary and implied assumption of the risk.

9

In its entry granting summary judgment, the trial court did not give its reasons for the ruling, and we address both.

### 1. Primary Assumption of the Risk

{¶31} The doctrine of primary assumption of the risk applies when a plaintiff knows of a risk and decides to proceed into the perilous situation despite that danger. *See Parker v. L.T.*, 1st Dist. Hamilton No. C-160642, 2017-Ohio-7674, ¶ 22. The defense is a total bar to recovery in a negligence action. *See Marchetti v. Kalish*, 53 Ohio St.3d 95, 99-100, 559 N.E.2d 699 (1990). Whether to apply the affirmative defense of assumption of the risk presents an issue of law for the court to determine. *Id.*

{¶32} Courts generally apply this doctrine to bar claims for injuries resulting from recreational or sporting activities because the providers of these activities cannot eliminate their inherent risks. *See Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, 979 N.E.2d 1246, ¶ 19. The general rule is that where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for an injury unless it can be shown that the other party's actions were either reckless or intentional. *Marchetti* at 100. However, "only those risks directly associated with the activity in question are within the scope of primary assumption of the risk." *Horvath* at ¶ 19, citing *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 432, 659 N.E.2d 1232 (1996). The risk must be one that is so inherent in the sport or activity that it cannot be eliminated. *Id.*

{¶33} While we found no Ohio cases involving assumption of the risk and "haunted" attractions,[1] courts in other jurisdictions have found that the attraction

---

[1] *Milbert v. Wells Twp. Haunted House, Inc.,* 2016-Ohio-5643, 70 N.E.3d 1143 (7th Dist.), cited by the plaintiffs, does not support their position that the doctrine of primary assumption of the risk should not apply to bar recovery for persons injured in haunted house attractions. In *Milbert*, the political subdivision that operated the attraction did not assert that the plaintiff assumed the risk of injury where the failure of a loose bolt caused the "lid" of a coffin ride to open prematurely and eject the plaintiff. The issue was rather governmental immunity and negligence.

operators have no duty to protect a patron from her own reaction to scares that occurred within the confines of the attraction. For example, in *Durmon v. Billings*, 873 So.2d 872 (La.App.2004), a patron inside a "haunted" cornfield maze was approached by a costumed character with a running chainsaw (from which the chain was removed). The patron attempted to run away, but she fell and injured herself. The court found that the owners of the maze owed no duty to the patron to warn or protect her from her reaction to being frightened by a costumed character, "an experience she expected to have and for which she paid an *additional* admission fee." (Emphasis sic.) *Id.* at 879.

{¶34} In *Mays v. Gretna Athletic Boosters, Inc.*, 668 So.2d 1207 (La.App.1996), a patron inside a haunted house was injured when someone scared her, causing her to run into a cinder block wall. The court found that the operator had no duty to protect the patron from running in a dark room into a wall: "Patrons in a Halloween haunted house are expected to be surprised, startled and scared by the exhibits but the operator does not have a duty to guard against patrons reacting in bizarre, frightened and unpredictable ways." *Id.* at 1209.

{¶35} In *Galan v. Covenant House New Orleans,* 695 So.2d 1007 (La.App.1997), a patron was exiting from a haunted house and was in the last exhibit in a walled alleyway when she was scared by a costumed character, and she ran and was injured. The court found that the haunted house operator owed the patron no duty to guard against her reactions at any point while in the attraction. *Id.* at 1009.

{¶36} And, in *Griffin v. The Haunted Hotel, Inc.,* 242 Cal.App.4th 490, 194 Cal.Rptr.3d 830 (2015), the court found that the plaintiff had voluntarily paid money to experience, and assumed the risk of, being chased within the physical confines of the attraction by a chainsaw carrying maniac character. *Id.* at 509.

{¶37} In this case, Dungeons argues that no question of fact remained on the issue of whether Davis was in the confines of the haunted house attraction when her

injury occurred. Dungeons attached to its summary-judgment motion an affidavit by Mark Mateikat that averred that Davis was " 'in' the haunted house event when she ran and fell." Mark Mateikat also averred that the haunted house "event" began as patrons walked through a graveyard scene located on the side of the haunted house building. In an earlier deposition, however, Mark Mateikat testified that Dungeons was "much different than other haunts" in that the area outside of the haunted house was not part of the scare experience, and that the scariness did not begin until the patron entered into the building itself. A moving party's inconsistent affidavit may not be used to obtain summary judgment. *See Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 26.

{¶38} In addition, Davis testified that she had not yet entered the haunted house attraction when she was chased by the costumed worker. Therefore, questions of fact remain as to whether Davis had entered the physical confines of the attraction and whether she could be expected to foresee or accept the attendant risk of injury from being chased by a costumed haunted house worker. The trial court erred by entering summary judgment in favor of Dungeons on the basis of primary assumption of the risk.

{¶39} In addition, by entering summary judgment in favor of Dungeons on the negligence claims, the trial court necessarily concluded as a matter of law that neither Matt Mateikat nor any other Dungeons employee engaged in reckless conduct by chasing Davis. The plaintiffs assert, and we agree, that a question of fact remains as to whether the employee's conduct rose to the level of recklessness.

### 2. Secondary, or Implied, Assumption of the Risk

{¶40} Secondary, or implied, assumption of the risk is defined as the "plaintiff's consent to or acquiescence in an appreciated, known or obvious risk to plaintiff's safety." *Peterson v. Martyn*, 10th Dist. Franklin No. 17AP-39, 2018-Ohio-

2905, ¶ 36. The defense of implied assumption of the risk has been merged with the defense of contributory negligence. *See Jester v. Utilimap Corp.*, 2018-Ohio-4755, 116 N.E.3d 185, ¶ 15 (1st Dist.); *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 112, 451 N.E.2d 780 (1983).

{¶41} Implied assumption of the risk invokes factual questions that are generally to be resolved by a jury and not by summary judgment. *Peterson* at ¶ 37. In this case, because questions of fact remain as to whether Davis reasonably chose to proceed in the face of a known risk, the trial court erred by entering summary judgment in favor of Dungeons on the basis of implied assumption of the risk. We sustain the second assignment of error.

### D. Conclusion

{¶42} Having sustained both assignments of error, we reverse the trial court's judgments and remand the cause for further proceedings.

Judgments reversed and cause remanded.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.